THE STATE v. HAYS, *Appellant.*

1. **Indictments.** Indictments are required to conclude "against the peace and dignity of the State." Const., art. 6, § 38. But the addition of the words "of Missouri," will not be ground of objection.

2. ———. An indictment found before section 1798, Revised Statutes 1879, became the law, was not indorsed "A true bill," nor signed by the foreman of the grand jury, but no objection was made on these grounds till the case reached this court. *Held,* that the defect was cured.

3. **Embezzlement by Public Officers:** SCHOOL FUNDS: STATUTE, CONSTRUCTION OF. Section 41 of article 3, chapter 42, Wagner's Statutes, (p. 459,) providing for the punishment of public officers embezzling public funds, was applicable as well to officials whose offices were created after that section became law as to those already existing. It included in its operation the "Township Trustee" provided for by the Township Organization Law of 1873, (Acts 1873, p. 100;) and under it that officer was liable for school funds misappropriated.

4. **Construction of Statutes.** In the construction of statutes the intention of the legislature is to be ascertained from the language used, and not from general inferences to be drawn from the nature of the objects dealt with.

5. **Criminal Law:** TWICE IN JEOPARDY. After a jury had been empanelled in a criminal case and before any evidence had been sub-

The State v. Hays.

mitted, the defendant interposed an objection to the sufficiency of the indictment. The objection was sustained, the indictment quashed and the jury discharged. The defendant having been afterward tried upon another indictment found for the same offense; *Held,* that he had not been twice put in jeopardy.

6. **Pleading, Criminal:** TOWNSHIP ORGANIZATION. An indictment against a township officer must aver that the county has adopted township organization. This is a thing of which the courts will not take judicial cognizance, and proof of it will not be received without a proper averment.

7. ———: ———: EMBEZZLEMENT BY PUBLIC OFFICER. An indictment against a township trustee charged that he had embezzled "public moneys belonging to the school fund of North township," in Dade county. Strictly speaking the moneys belonged to the sub-districts of North township, rather than the township itself. *Held,* however, that this did not invalidate the indictment. It was sufficient to allege that the funds embezzled were "public moneys," and the amplification in the charge did not vitiate or limit the proof.

8. **Practice, Criminal:** OFFICER IN CHARGE OF JURY. In the absence of evidence that either the officer in charge of the jury or any one else had any communication with the jury, the verdict should not be set aside because the officer did not take the special oath required by section 1910, Revised Statutes 1879.

9. ———: VERDICT. Failure of the jury to find on all the counts of the indictment does not vitiate the verdict. It operates an acquittal as to the omitted counts.

*Appeal from Dade Circuit Court.*—HON. J. D. PARKINSON, Judge.

AFFIRMED.

*E. J. Smith* for appellant.

*D. H. McIntyre,* Attorney General, for the State.

PHILIPS, C.—The defendant was indicted at the October term, 1877, of the Dade circuit court for embezzling public funds held by him as trustee of North township in said county. At the trial of this indictment, at the October term, 1879, after the empanelling of the jury, the record recites: "Whereupon the State, by her said attorney, pro-

ceeded to offer testimony to sustain the issue upon her part, which testimony is by said defendant objected to, by way of demurrer to the sufficiency of the indictment in this cause, which objection by way of demurrer interposed by said defendant is by the court sustained, and said indictment is for naught held, and whereupon the jury is discharged from the further consideration of this cause, without prejudice to the rights of said State of Missouri or the defendant herein." At the same term of this entry the defendant was re-indicted for the same offense. There are three counts in the indictment, charging the same offense in varying forms. The jury returned a verdict of guilty on the second count, without assessing the punishment, or in form making any finding as to the other counts. The court thereupon assessed the punishment at five years in the penitentiary, that being the minimum punishment fixed by law.

The substance of the second count of the indictment on which the defendant was convicted is, that from 1875 to 1877 the defendant was elected to and held the office of township trustee of North township, in said Dade county; that said county had prior thereto adopted the township organization; that said office was a public office by virtue of the laws of the State; that defendant, by virtue of his said office, received for safe keeping, transfer and disbursement, the sum of $500, of the public moneys belonging to the school fund of said North township, and that between the — day of April, 1876, and the — day of August, 1877, the defendant unlawfully, willfully and feloniously did embezzle and make way with the sum of $436.71 of said public money, belonging to the school fund of said North township. The indictment then set out the proceedings had under the first indictment, manifestly for the purpose of preventing the bar of the statute of limitations; and concluded with the words " contrary to the form of the statute in such cases made and provided, and against the peace and

dignity of the State of Missouri." Defendant brings the case here on appeal.

I. The indictment was manifestly founded on section 41, article 3, page 459, Wagner's Statutes, which declares that: "If any officer, appointed or elected by virtue of the constitution of this State, or any law thereof, or if any agent or servant of this State, shall convert to his own use, in any way whatever, or shall use by way of investment in any kind of property or merchandise, or shall make way with or secrete any portion of the public moneys, or any valuable security by him received for safe keeping, disbursement, transfer, or for any other purpose, of which he may have the supervision, care or control, by virtue of his office, agency or service, every such officer, agent or servant, shall upon conviction, be punished by imprisonment in the penitentiary not less than five years."

The indictment is good under this section. We will dispose of the objections made to it as they occur. It is objected 1. INDICTMENTS. that it does not conclude, in the language of the constitution, "against the peace and dignity of the State." The only difference, if it may be so called, between that and the indictment, is, that the indictment adds the words "of Missouri." This objection is without merit. The added words are but what the constitutional language implies, and the addition in no wise enlarged, varied or changed the phrase or the sense.

II. It is alleged that the bill of indictment was not indorsed "a true bill," nor signed as such by the foreman of the grand jury. This objection comes for the first time in this court. Time and again it has been held by the Supreme Court that this objection comes too late after verdict. *State v. Mertens*, 14 Mo. 94; *State v. Burgess*, 24 Mo. 381; *State v. Harris*, 73 Mo. 287. This indictment having been found in October, 1879, section 1798, Revised Statutes 1879, does not apply.

III. It is next claimed, that at the time of the enactment of the section of the statute on which the indictment

3. EMBEZZLEMENT BY PUBLIC OFFICER: school funds: statute, construction of. is based, the township organization had not been provided for by legislative act; and, therefore, the office held by defendant was not in the purview of the said 41st section of the statute, and could not have been in the legislative mind at the time of its passage in 1870. This statute was necessarily prospective in its operation. It applied, by its terms, to the then existing officers of the State, of whatever grade, so that they only came into official being " by virtue of the constitution of this State, or any law thereof." As a corollary to this it would apply to any officer thereafter created, provided, only, that he be "appointed or elected by virtue of the constitution or any law thereof." The township organization was created by law pursuant to the constitution. So it remains only to be ascertained from the township law itself whether or not the office attributed to the defendant in the indictment, was provided for or created by the act for the organization of counties into townships. By section 2, article 4 of this act, (Laws 1873, p. 100,) the "township trustee" is one of the enumerated officers. All through the act he is recognized as an officer. Article 7 defines his duties. Section 1. " The township trustee of each township shall receive and pay over all moneys raised therein for defraying township expenses." From sections 3 and 6 it is manifest that among the moneys which it was in the contemplation of the legislature would come into his hands by virtue of his office, were school moneys.

But an argument in support of appellant's position, is sought to be drawn from the enlargement of the phraseol-

4. CONSTRUCTION OF STATUTES. ogy of the section in the statute of 1870, found in section 1326, Revised Statutes 1879. It is contended that the words "including as well all officers, agents and servants of incorporated cities and towns, or municipal townships or school districts" contained in the law of 1879 is an implied declaration of the legislature that such officers were not hitherto within the provisions of the statute. With as much logic might it be

asserted that sheriffs, county treasurers and collectors were not embraced in the law prior to this act of 1879 ; for following the words last quoted in section 1326, are these : "as of the State and counties thereof." So the whole of it in effect reads : " Including officers of the State, county, incorporated towns or cities, municipal townships or school districts." As well say that prior to the statute of 1879 a constable could not have been indicted under the statute of 1870 for embezzling funds in his official hands. Perhaps the most rational exposition of the particularity of the section in the revision, was to apply its provisions in explicit terms to the enumerated class, so as to leave no doubt in the mind of the querulous as to the large scope and comprehension of this statute, striking at a growing crime in the land, the misappropriation of public funds. The intention of the legislature must be ascertained from the words of the statute, and not from any general inferences to be drawn from the nature of the objects dealt with by the statute. This is the enunciation of a learned judge in *Regina v. Doubleday*, 3 Ellis & Ellis Q. B. 514, where it is held that a statute enumerating " overseers of the poor, constables, assessors, collectors and any other persons whomsoever," meant just what it said, and applied to all persons, and was not restricted to the persons particularized in the act. Nothing could be broader or more comprehensive than the words " any officer" employed in the 41st section above quoted.

IV. It is urged that by being put to trial under the second indictment defendant was twice placed in jeopardy 5. CRIMINAL LAW: for the same offense. Without undertaking twice in jeopardy. ing to discuss in detail the application of the rule or principle of law invoked, touching what constitutes jeopardy, it is sufficient, for the purposes of this case, to say that if the former indictment had been sufficient to sustain a conviction, and its further prosecution had been voluntarily abandoned by the State after the empanelling of the jury, and the reading of the indictment the defend-

ant could not again be exposed to conviction upon the same charge. Cooley, in his admirable work on Constitutional Limitations, page 327, very succinctly asserts that a person is in legal jeopardy when he is put upon trial, before a court of competent jurisdiction, upon an indictment which is sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance : "And a jury is said to be thus charged when they have been em-panelled and sworn." There are exceptions to this general rule, among which is, that if the jury are discharged with the consent of defendant, expressed or implied ; or if after verdict of guilty the same has been set aside on defendant's motion for a new trial, or the judgment arrested. *Commonwealth v. Stowell*, 9 Met. 572 ; *State v. Slack*, 6 Ala. 676.

It is to be observed that the defendant himself, before any evidence was submitted to the jury, interposed an objection to its admission upon the distinct ground that the indictment alleged no offense. It was in the nature of a demurrer to the bill, and the court thereupon, in effect, quashed the indictment, and stopped the cause, and discharged the jury at his instance, as he did not object.

I am satisfied furthermore, upon an examination of the first indictment that defendant's objection to it was well taken. The defendant was indicted as an officer of North township, apparently under the assumption that the county was acting under the township organization. There was no averment in the indictment that the county was so organized. This was essential, and it was a defect supplied in the second indictment. The courts will not take judicial cognizance of the existence of county township organizations. It is a fact so far resting *in pais* that proof thereof must be made, and to admit such proof there must, especially in so important a proceeding as indictment for felony, be an affirmative allegation of the fact. *Robinson v. Jones*, 71 Mo. 584 ; *Ober v. Pratte*, 1 Mo. 80 ; *Sumners v. Tice*, 1 Mo. 349 ; *Gorman*

6. PLEADING, CRIM-INAL: township or-ganization.

*v. P. R. R. Co.*, 26 Mo. 453; *Southgate v. A. & P. R. R. Co.*, 61 Mo. 89, '95.

V. It is pressed as error that the indictment was defective in charging that the money embezzled belonged to

7. ——: ——: embezzlement by public officer.

the school funds of North township. It may be conceded that the moneys held by the defendant were distributable among the several school districts. But the fact remained that these moneys were of the funds which came to that township, a corporation, of which defendant was the financial custodian. In a sense they belonged to the township in trust for school district subdivisions. But it is a sufficient answer to this objection to say that this indictment was good, in that it alleged that it was "public money," and the amplification in the charge did not vitiate or limit the proof. *State v. Flint*, 62 Mo. 393.

VI. The record shows that the sheriff, who took the jury in charge when they retired to consider of their ver-

8. PRACTICE, CRIMINAL: officer in charge of jury.

dict, was not sworn as provided in section 1910, Revised Statutes 1879. The bill of exceptions states "that after the hearing of the argument of counsel, the jury retired to consider of their verdict, under the charge of an officer, the sheriff of Dade county, Missouri, who was not sworn as required by section 1910, page 320, Revised Statutes 1879."

This presents a question of much gravity and difficulty. We had occasion at the last April term to examine this point, in the case of the *State v. Hayes, ante,* p. 307. The facts of that case differ from this, in the circumstance that there the jury retired in charge of the sheriff, and were out one and a half hours before the sheriff was sworn, and he was sworn before he had any communication with the jury and before they had made their verdict. We held that did not constitute reversible error. As was said there, "the section of the statute (1910, R. S.,) was designed to secure the jury against any outside influence, and even that of the officer in charge. And in a case where the precau-

tionary oath is not administered the court ought to be well satisfied that no harm has resulted therefrom to the prisoner." So it was held that as there was nothing in that case to give color to any suspicion that there had been any access to or communication with the jury from without, the object of the statute had been practically attained. The legislature sought by this provision to throw every possible safe-guard around the jury in its retirement in felony cases, and to stimulate the officer in charge to caution and silence by imposing upon him the obligation of an additional and special oath. And whilst it has been held in cases like those of *State v. Upton*, 20 Mo. 397 ; *State v. West*, 69 Mo. 401, and *State v. Baber*, 74 Mo. 292, that certain irregularities, such as furnishing intoxicating liquors to juries, or permitting them to visit improper places, while considering of their verdict, would not be sufficient ground for new trial, unless it was made to appear affirmatively that the irregularity or external intercourse did affect the verdict as a matter of fact, I am of opinion that the spirit and the letter of the statute under consideration, would be best observed and rendered effective by the trial court ordering a new trial where, without having obeyed the statutory requirement of administering the precautionary oath, it was manifest to the court that either the sheriff ·himself or any one else had been permitted " to speak or to communicate with the jury." The influence, so subtle and often almost impossible of proof, of such communications, will thus be so guarded against as to secure to the accused the full effect of the statutory safe-guard ; and at the same time it will prevent interference with the verdict where there is nothing to indicate that the omission to administer the oath had worked any possible injury.

The record in this case shows that the jury retired, under charge of the court and the sheriff, and there is no proof whatever that he or any one else even spoke to the jury during their retirement. To vacate the verdict in such a state of case would be an observance of the mere

letter of the law without an intelligent recognition of its spirit.

VII. The failure of the jury to make an affirmative finding on the other counts of the indictment, is not rever-

9. ——: verdict. sible error. Where the jury find a verdict of guilty on one count, and are silent as to the rest, the law treats it as an acquittal as to such other counts. *State v. McCue*, 39 Mo. 113; 2 Bishop Crim. Pro., par. 837.

I have examined the instructions with some care, although the motion for new trial pointed out no specific objections to them, to satisfy my own mind that the accused has had a fair trial under the law of the land. While some of the instructions are very inartistically drawn, and standing alone might possibly have been liable to misconstruction, yet taken as a whole they conveyed clearly and unequivocally to the mind of an ordinarily intelligent jury the real issues under the indictment, and the law applicable thereto, and it is not manifest that they were probably misled by any one of the number given.

Finding no material error in the record, and being satisfied the defendant had a fair and impartial trial according to law, the judgment of the circuit court is affirmed. All concur.